*211 OPINION.
Disney :
It is the petitioner’s position that the services for which the sum of money here involved was received were rendered in California, under the agreement by which he took over the Los Angeles agency, and therefore the money is community income; while the respondent argues that the money was received under a contract having its inception in a noncommunity state, and therefore the money is petitioner’s separate property. There can be no doubt that the decline in petitioner’s income which would ensue from acceptance of the Los Angeles agency was the reason for the waiver by the company of the imposition of its 2 percent collection fee; nor is there doubt that in order to secure the benefit of such waiver the petitioner must continue as a manager in the employ of the company. But does it follow therefrom that the moneys here involved constitute additional compensation for the services performed while the community existed in California? We find the question close and interesting, but after much consideration we come to the conclusion that the petitioner has not shown the income to be earnings of petitioner while a member of a marital community in California. The answer depends largely upon whether what was done in California constituted earning the income, or merely fulfillment of a condition inhering in a contract having its inception in another, noncommunity, state. Obviously, the income had a connection, not only with the original contract of 1919. but with that of 1938, resulting from the correspondence early in that year and prior to the contract of April 25, 1938, all outside the State of California.
The 2% percent to which, before deduction of collection fee by the company, the petitioner was entitled, was based upon services rendered at St. Louis. The company waived the 2 percent collection fee prior to the services in Los Angeles, subject to a condition — rendition of managerial services (in Los Angeles as it transpired). We think that the inception of the earning was the old contract and services outside of California, and that there was, in California, only performance of the condition, and not earning of compensation without base in a non-community state. The waiver of the collection fee was, in our opinion, mere inducement, not an addition to compensation earned in California. If the earnings have their inception in a noncommunity state, there appears to be no requirement that nothing whatever can transpire in the community state without making the income that of the community. In Creamer v. Briscoe, 109 S. W. 911, the first community settled upon land and did everything required for homestead purposes, except to complete the time requirement as to possession. The wife died, the husband remarried and a second community completed the necessary occupancy and secured the patent. The property *212 was held to have been acquired by the first community. The authority seems well settled to the effect that performance in a community state of a condition involved in a contract made in a noncommunity state leaves the property noncommunity. In Sara R. Preston, 35 B. T. A. 312, we quoted McKay on Community Property, § 517, as follows:
* * * when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or, if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right.
Section 520 of the same work is quoted by us in John M. King, 26 B. T. A. 1158 (affd., 69 Fed. (2d) 639), as follows:
An inchoate title or pecuniary right is property in the sense of the law of separate and common property, just as truly as the most unimpeachable or perfect title. It takes its rank as separate or common property, for the same reason, and in response to the same tests, as the perfect or complete title or right, and it retains its character as separate or common so long as it can be traced; its development from, an inchoate to the absolute or complete form does not shift it from one fund, to another; it may be relieved of conditions and burdens but this does not change its character; it may pass from a conditional to an unconditional form, without change or legal character; it m'ay be exchanged for other things or rights, and its character as separate or common passes to whatever was acquired by the exchange. If the property consists of an obligation, either contractual or delictual, it may be performed or enforced; and whatever is so acquired takes the same character as the obligation. [Italics supplied.]
We think that the petitioner herein had, prior to the inception of the community in California, an inchoate right which was property, albeit subject to condition, and that under the above authority the inception of the income was in the previous contract and services, and not the earnings in California. The rationale of the above quotations seems to have been consistently followed, though the circumstances differ. See William Semar, 27 B. T. A. 994; W. L. Honnold, 36 B. T. A. 1190; Albert J. Houston, 31 B. T. A. 188 (D. C. California), citing a number of cases. In our opinion, this proceeding involves, not additional compensation earned in California, but performance of a condition involved in the contract wherein the amounts involved have their inception. We therefore hold that the Commissioner did not err in including the entire amount in petitioner’s income.

Decision will be entered for the respondent.